UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – FLINT

IN RE:

    TRINA KAY RAKAY,                              Case No. 17-32760-dof
        Debtor.                                        Chapter 13 Proceeding
_____/         Hon. Daniel S. Opperman
JEFFREY K. ROETTGER,

       Plaintiff,

v.                                                                Adversary Proceeding
                                                                    Case No. 18-03018-dof
TRINA KAY RAKAY,

       Defendant.
_____/

<u>OPINION REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

     Plaintiff Jeffrey K. Roettger filed a Motion for Summary Judgment arguing that this Court should give a state court order preclusive effect and make a determination that the debt owed to him by Defendant Trina Kay Rakay is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2) due to fraud and under 11 U.S.C. § 523(a)(5) for a domestic support obligation. Defendant disagrees that the state court order should be given such an effect and argues that Plaintiff is not entitled to summary judgment. Because collateral estoppel applies to part of the judgment, the Court grants Plaintiff's Motion for Summary Judgment in part and denies it in part for the reasons discussed in this Opinion.

Facts

     Plaintiff and Defendant Trina Kay Rakay were married on September 23, 2011. Defendant filed a complaint for divorce in the Oakland County Circuit Court on February 2,

1

2015.  The divorce was contentious and the dispute between the parties centered on the use of certain property during the incarceration of Plaintiff.  Plaintiff's arbitration summary stated that "Alimony is not at issue.  However, due to the extreme nature of [Defendant's] wanton theft and destruction of [Plaintiff's] house and belongings, the equitable division of property is at issue."  The parties agreed to arbitration on October 13, 2015.  The "Matrimonial Arbitration Acknowledgment and Agreement" entered into between the parties set forth the following issues "to be arbitrated:"  "division of real and personal property, including ancillary issues related thereto;" "costs, expenses and attorney fees;" and "allocation of the parties' responsibility for marital debts."  Other issues were identified in the agreement as "not applicable," including "spousal support."

A lengthy Arbitration Ruling was issued on August 25, 2016.  Some of the relevant portions of that ruling are as follows:

> This matter was referred for binding arbitration by stipulation of the parties' and order of the Court.
> Issues placed in arbitration are division of real and personal property, costs, expenses and attorney fees, and allocation of the parties' responsibility for marital debt.
> An arbitration hearing was conducted on January 25, 2016.  [Defendant] Trina Roetteger chose to represent herself, and [Plaintiff] Jeff Roetteger was represented by counsel.
> Trina had been previously presented by an attorney, was aware of her right to be represented by an attorney, but preferred to proceed on her own behalf.
> . . . .
> Jeff owned a Denali 5th wheel camper, and Silverado pick-up truck.  He testified these were gifted to him by his father. . . .
> Jeff testified that, after he was incarcerated, Trina sold these assets without his knowledge or permission, or without legal authority to do so. . . .
> . . . .
> Trina testified that she believed these items to be joint property because Jeff's dad gifted the pick-up truck and the 5th wheel camper to both of them during the marriage and, even though her name was not on the titles, she believed the donor's intent was that she own them.

2

Trina testified that while Jeff was in jail she sold the pick-up truck to her son . . . . Since she was not on the title, she had to sign Jeff's name to the title, which is, arguably forgery. However, she claims she had Jeff's permission to do so, a point on which Jeff vigorously denies.

. . . .

Jeff introduced his father's de bene esse deposition. His father testified he only met Trina on a few occasions, did not know her well, and had no intent to give her any kind of a gift or property. It was his intent to do exactly what he did, which was gift something to his son, and it was titled in his son's name.

The arbitrator's finding is Trina had no legal right to sign Jeff's name to titles and sell property. Her testimony that Jeff somehow wanted her to do this on his behalf is inherently incredible. Further, there is no evidence Jeff received any money from the proceeds of sale.

. . . .

. . . Jeff would have Judgment against Trina in the amount of $14,000.00, for the wrongful loss of the Denali caused by her deliberate and arguably illegal actions.

. . . .

Accordingly, the combined total for the Denali and the Silverado, Jeff is entitled to Judgment in the amount of $24,000.00.

. . . .

The need to litigate these points relative to the Denali and Silverado were created by Trina's fraudulent actions, and her false testimony regarding these items. . . .

There was an above ground pool at the house . . . . While Jeff was in jail, Trina had the pool removed. She testified she feared "they" would lose the house in foreclosure because the payments were not being made and she wanted to preserve the asset, the pool.

. . . .

In February of 2016 . . . the pool was, apparently returned to Jeff in adequate condition. . . .

. . . Jeff is entitled to Judgment in the amount of $1,200.00 to reimburse the cost of returning the pool to its prior location.

Trina was without any legal justification or right to remove the pool from the property. There is no evidence that was sound judgment on any level.

Jeff claims a great deal of his personal property, tools, furniture and similar, were disposed of or destroyed by Trina during Jeff's incarceration . . . .

. . . .

Testimony about the personal property is convoluted, unclear, and unpersuasive by both parties as to many items. It is more probable than not than Trina moved more property from the house than she should have. Arguably, she should not have taken anything until there was some agreed upon disposition.

. . . .

As to personal property, the arbitrator is persuaded that Trina removed some of Jeff's personal property, or allowed it to be taken perhaps by the improper

3

tenants (see discussion elsewhere), but one way or the other, there is no doubt Jeff lost some personal property. . . .

. . . .

It is the arbitrator's conclusion that the best evidence supports the property removed had a probable Fair Market Value of $6,302.00. It is admittedly an estimate based on knowledge of used property. It does appear Trina sold things, probably in a garage sale, but possibly just to neighbors. It further appears that most of Jeff's property was separate property, not marital property.

On this issue, Judgment to Jeff against Trina in the amount of $6,302.00.

Jeff has a somewhat confused theory for recovery with respect to money he claims Trina removed from the marital estate or cost him by reason of what he calls "extortion" or failure to pay his bills on his behalf.

. . . .

Jeff's theory is he owns the home as his separate property, and no value accumulated during the marriage. Apparently, the rest of his theory is Trina is responsible to make his house payments and his property tax payments, on his separate property, while he sits in jail. Jeff's theory as to damages for unpaid mortgage payments and/or property tax payments, and similar fails. It is his own fault he was sitting in jail not taking care of business. Since Trina has no ownership responsibility for the properties, she has no other obligations pertaining to the properties.

The exception is as set forth below.

. . . .

. . . the mortgage and other expenses on the house were not being paid, and Trina was deriving income from use of the house. So, to the extent Trina derived income off of the house, while letting payments go delinquent, equity demands some kind of compensation or pay-back.

It appears the value derived from the house for the approximate 7 months over while the above occurred . . . would be at least $1,500.00 per month. The actual cost to Jeff for owning the property may have been greater.

However, it is well established it really was not Trina's obligation to pay the bills on Jeff's house, just because Jeff was sitting in jail. If he had not been married to Trina, he would still have the problem of paying his bills while incarcerated. However, the idea that Trina would not live in the house as his wife, but rather park others in the house and derive profit from the house is an entirely different matter.

. . . .

The rental Fair Market Value of the house for all of these people to live there, which should really go to Jeff, for the 7 months in question, is $10,500.00.

Therefore, Jeff should be entitled to $10,500.00 on this issue.

Under "Summary of Conclusions," the arbitrator stated, in part:

18-03018-dof    Doc 34    Filed 09/14/18    Entered 09/14/18 11:25:27    Page 4 of 19

> Trina fraudulently disposed of marital property by forging Jeff's name on at least one title, by her own admission, and selling property in which no interest—and keeping the money.
> The arbitrator finds Trina engaged in the fraudulent conveyance and fraudulent concealment of certain personal property during the marriage. The arbitration award is based upon that finding.

Under "Award," the ruling stated, in relevant part:

> Jeff shall have Judgment against Trina in the amount of $41,502.00 . . . .
> The Judgment should include this language:
> The purpose and intent of the provision contained in this Judgment . . . is to provide for and ensure the suitable maintenance or support of the beneficiary of such provision. Accordingly, any duty, obligation, or liability, and/or property settlement arising under or pursuant to this or any other such provision contained in this Judgment is not dischargeable in bankruptcy or otherwise under any federal or state law.
> The purpose and intent of the above provisions . . . is to provide for and ensure the suitable maintenance or support of the other party and is a 'domestic support obligation' (DSO) as defined in the Bankruptcy Abuse Preventions and Consumer Protections Act (BAPCPA), 11 USC Sec. 523(a)(5). Accordingly, any duty, obligation or liability arising under or pursuant to this or any other such provision in this Judgment is not dischargeable in bankruptcy or otherwise under any federal or state law.
> . . . .

The arbitrator also stated: "[n]either party sought nor is either party awarded spousal support, and same should be forever barred.

The Judgment of Divorce was issued by the Oakland County Circuit Court on November 3, 2016. Under "Spousal Support/Alimony," the judgment states: "It is hereby ordered that Plaintiff shall neither pay nor receive alimony from Defendant and alimony is forever barred. It is hereby ordered that Defendant shall neither pay nor receive alimony from Plaintiff and alimony is forever barred." Under "Property Settlement," the Judgment sets forth relevant portions of the arbitrator's "Award."

Defendant filed a voluntary petition under Chapter 7 of the Bankruptcy Code on December 5, 2017. Plaintiff brought this adversary proceeding on February 20, 2018, seeking a

5

determination of nondischargeability for the $41,502.00 award in the Judgment of Divorce pursuant to § 523(a)(5) and § 523(a)(15). Defendant later converted her Chapter 7 case to a Chapter 13 case, and Plaintiff amended his complaint, adding a claim under § 523(a)(2). Plaintiff brought this Motion for Summary Judgment, arguing that he is entitled to summary judgment based on principles of collateral estoppel, res judicata, and the Rooker-Feldman doctrine. He argues that the state court order should be given preclusive effect with regards to its conclusions regarding the fraudulent actions of Defendant as well as with regard to its definition of the award as a "domestic support obligation." Defendant responded, arguing that there is a genuine issue of material fact regarding whether she had the necessary intent to deceive under § 523(a)(2). She also argues that the issue of fraud was not ripe for litigation during the arbitration proceeding. Plaintiff filed a reply brief on August 25, 2018.

The Court heard oral arguments on Plaintiff's motion on August 29, 2018, and took this matter under advisement.

## Jurisdiction

This Court has subject matter jurisdiction over this proceeding under 28 U.S.C. § 1334(b), 28 U.S.C. § 157, and E.D. Mich. LR 83.50(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) because the issues relate to the dischargeability of a particular debt.

## Applicable Law

A. Summary Judgment Standard

Federal Rule of Civil Procedure 56 is made applicable in its entirety to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56(a) provides that summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden

6

"of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). "A 'genuine' issue is one where no reasonable fact finder could return a judgment in favor of the non-moving party." *Chudzinski v. Hanif* (*In re Hanif*), 530 B.R. 655, 663 (Bankr. E.D. Mich. 2015) (quoting *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998)).

The burden shifts to the nonmoving party once the moving party has met its burden, and the nonmoving party must then establish that a genuine issue of material fact does indeed exist. *Janda v. Riley-Meggs Indus., Inc.*, 764 F. Supp. 1223, 1227 (E.D. Mich. 1991). The non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts. If the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the non-moving party, the motion should be granted.'" *Hanif*, 530 B.R. at 663 (quoting *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995)).

B. <u>Non-applicability of Res Judicata and Rooker-Feldman</u>

Plaintiff argues that he is entitled to summary judgment based on the principles of collateral estoppel, res judicata, and the Rooker-Feldman doctrine. However, the bankruptcy courts do not apply res judicata, also known as claim preclusion, in dischargeability proceedings since the United States Supreme Court held in *Brown v. Felson*, 442 U.S. 127, 136 (1979), that bankruptcy courts are endowed with exclusive jurisdiction to determine dischargeability actions. *See Cresap v. Waldorf (In re Waldorf)*, 206 B.R. 858, 861 (Bankr. E.D. Mich. 1997). Similarly, while the Rooker-Feldman doctrine provides that a federal trial court may not review a state court decision, that doctrine does not require a federal court to surrender its own exclusive jurisdiction. *Sill v. Sweeney (In re Sweeney)*, 276 B.R. 186, 195 (B.A.P. 6th Cir. 2002). Thus,

under the Rooker-Feldman doctrine, a bankruptcy court may not review the merits of a debt, but it may within its exclusive jurisdiction determine whether that debt is dischargeable or not. *Id.*

C. Collateral Estoppel

While collateral estoppel, also known as issue preclusion, is applicable in bankruptcy dischargeability proceedings, *see Grogan v. Garner*, 498 U.S. 279, 284 (1991), a bankruptcy court must determine whether applicable state law would give collateral estoppel effect to the state court judgment, *Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315, 317 (6th Cir. 1997). Under Michigan law, collateral estoppel applies when

> 1) there is identity of parties across the proceedings, 2) there was a valid, final judgment in the first proceeding, 3) the same issue was actually litigated and necessarily determined in the first proceeding, and 4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding.

*Hinchman v. Moore*, 312 F.3d 198, 202 (6th Cir. 2002) (quoting *Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001) (citing *People v. Gates*, 452 N.W.2d 627, 630-31 (Mich. 1990))).

"An issue is 'actually litigated' if it 'is put into issue by the pleadings, submitted to the trier of fact, and determined by the trier of fact.'" *Waldorf*, 206 B.R. at 863 (quoting *Latimer v. Mueller & Son, Inc.*, 386 N.W.2d 618, 627 (Mich. Ct. App. 1986)). A trial is not necessarily required for an issue to be "actually litigated." *Latimer*, 386 N.W.2d at 627. "Michigan law clearly dictates that summary disposition in the state court is a valid and final judgment." *Thomas v. Ware (In re Thomas)*, 366 B.R. 727, 729-30 (E.D. Mich. 2007) (citing *Allied Elec. Supply Co. v. Tenaglia*, 602 N.W.2d 572, 573 (Mich. 1999)). If an issue is essential to the judgment, it is "necessarily determined." *Gates*, 452 N.W.2d. at 631.

D. Section 523(a)(2)

Section 523(a)(2)(A) excepts from discharge debts "for money, property, services, or an extension, renewal, or refinancing of creditor, to the extent obtained by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

To prevail on a claim under § 523(a)(2)(A), a plaintiff must show that:

> (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 280-81 (6th Cir. 1998) (citations and footnote omitted). Intent, under *Rembert*, is measured subjectively. *Id.* at 281.

The purpose of § 523(a)(2) is to prevent debtors from retaining the benefits of property obtained through fraud. *XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443, 1451 (6th Cir. 1994). Plaintiff must show each element by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286 (1991). Even so, the Court must construe all of the exceptions to discharge strictly, and must give the benefit of the doubt to the debtor. *See Rembert*, 141 F.3d at 281; *see also Walker v. Tuttle (In re Tuttle)*, 224 B.R. 606, 610 (Bankr. W.D. Mich. 1998) (recognizing "the axiom that requires this court to construe exceptions to the bankruptcy discharge narrowly and in favor of the debtor").

The United States Supreme Court held in the case of *Husky Int'l Elec., Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016), that "actual fraud" under § 523(a)(2)(A) does not require a false representation. In *Husky*, the debtor was the principal of a debtor corporation that had previously

9

transferred assets without consideration to other companies he controlled in order to avoid payment to creditors of the initial debtor corporation. *Id*. at 1585. The *Husky* Court held that forms of fraud other than false representations, such as the fraudulent conveyance scheme present in that case, can constitute "actual fraud" under § 523(a)(2)(A).[1] *Id*. at 1590.

E. Section 523(a)(5)

Section 523(a)(5) excepts from discharge debts "for a domestic support obligation."[2] The term "domestic support obligation" is defined in the Bankruptcy Code at 11 U.S.C. §101(14A):

> The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—
>
> (A) owed to or recoverable by—
>
> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
>
> (ii) a governmental unit;
>
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
>
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
>
> (i) a separation agreement, divorce decree, or property settlement agreement;
>
> (ii) an order of a court of record; or

---

[1] When the "actual fraud" is not an inducement-based fraud, but rather some other type of fraud, reliance is no longer required to be proven. *See Lenchner v. Korn (In re Korn)*, 567 B.R. 280, 302-05 (Bankr. E.D. Mich. 2017) (discussing the elements of actual fraud in light of the Supreme Court's ruling in *Husky*).

[2] In a Chapter 13 case, 11 U.S.C. § 1328(a)(2) excepts debts under § 523(a)(5) from discharge but does not except debts under § 523(a)(15). Thus, the meaning of "domestic support obligation" is relevant. This is in contrast to Chapter 7 cases, where § 523(a)(5) and (a)(15) operating in tandem render any obligation owing a former spouse that arises from a divorce decree or separation agreement non-dischargeable.

10

>> (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
>
> (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

Generally, in determining whether a debt falls within one of the exceptions of section 523, the statute is construed narrowly against the creditor and liberally in favor of the debtor. *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000); *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987); *Murphy and Robinson Inv. Co. v. Cross (In re Cross)*, 666 F.2d 873, 879-80 (5th Cir. 1982). An exception to this general rule exists for the term "support," which is given a broad construction to promote the Congressional policy that favors enforcement of obligations for spousal and child support. *See Goans v. Goans (In re Goans)*, 271 B.R. 528, 531 (Bankr. E.D. Mich. 2001) (citing *Bailey v. Bailey (In re Bailey)*, 254 B.R. 901, 905 (B.A.P. 6th Cir. 2000)). Congressional policy regarding § 523(a)(5) has always been to ensure that support obligations would not be dischargeable. *Id.*[3]

Making a determination as to whether an obligation is in the nature of support in bankruptcy is a federal question. *In re Calhoun*, 715 F.2d 1103, 1107 (6th Cir. 1983). The absence of specific language designating an obligation as alimony, maintenance, or support does not foreclose a finding that an obligation is in fact such. *See, e.g.*, *Fitzgerald v. Fitzgerald (In re Fitzgerald)*, 9 F.3d 517, 520 (6th Cir. 1993). In *Calhoun*, 715 F.2d at 1109-10, the Sixth Circuit Court of Appeals established an analytical framework for determining when an obligation, not

---

[3] The cases cited above discuss the term "support" contained in pre-BAPCPA §523(a)(5). The rationale favoring a liberal construction for the term "support" in the former § 523(a)(5) seems equally applicable to the BAPCPA replacement contained in § 101(14A).

specifically designated as alimony, maintenance, or support, is nonetheless in the nature of support and therefore non-dischargeable. This four-step analysis is as follows:

> First, the obligation constitutes support only if the state court or parties intended to create a support obligation. Second, the obligation must have the actual effect of providing necessary support. Third, if the first two conditions are satisfied, the court must determine if the obligation is so excessive as to be unreasonable under traditional concepts of support. Fourth, if the amount is unreasonable, the obligation is dischargeable to the extent necessary to serve the purposes of federal bankruptcy law.

*Fitzgerald*, 9 F.3d at 520 (citing *Calhoun*, 715 F.2d at 1109-10). The burden of proving the obligations at issue are in the nature of support is on the creditor. *Id.*

The Sixth Circuit Court of Appeals revisited the issue of nondischargeability under § 523(a)(5) in two subsequent cases. In *Fitzgerald*, 9 F.3d at 521, the Sixth Circuit recognized that the *Calhoun* test had been applied more broadly than intended and stated that the second element, also known as the "present needs" tests, did not apply in situations where "the only question is whether something denominated as alimony is really alimony and not, for example, a property settlement in disguise." Finally, in *Sorah v. Sorah (In re Sorah)*, 163 F.3d 397, 401 (6th Cir. 1998), the Sixth Circuit stated that when a state court order specifically labels an award as support, and the award has all the indicia of support, the obligation should be conclusively presumed to be support.[4] The *Sorah* Court stated that traditional state law indicia that are consistent with support

> include, but are not necessarily limited to, (1) a label such as alimony, support, or maintenance in the decree or agreement, (2) a direct payment to the former spouse, as opposed to the assumption of a third-party debt, and (3) payments that

---

[4] While the application of *Calhoun*'s framework has been limited by *Fitzgerald* and *Sorah*, it is still relevant in scenarios where the obligation is not expressly designated as being in the nature of alimony, support, or maintenance. *Goans*, 271 B.R. at 533 (citing *Harvey v. McClelland (In re McClelland)*, 247 B.R. 423, 426 (Bankr. N.D. Ohio 2000); *Luman v. Luman (In re Luman)*, 238 B.R. 697, 705 n.2 (Bankr. N.D. Ohio 1999)).

are contingent upon such events as death, remarriage, or eligibility for Social Security benefits.

*Id.* Bankruptcy courts "need not limit their analyses to consideration of the three indicia discussed above, but may also consider other factors." *McNamara v. Ficarra (In re McNamara)*, 275 B.R. 832, 837 (E.D. Mich. 2002) (citing *Sorah*, 163 F.3d at 401).

Analysis

A. Section 523(a)(5)

The Court first addresses the argument that Plaintiff is entitled to summary judgment on his claim under § 523(a)(5). Plaintiff cites *Sorah* to argue that when an award is labeled as support and has all the indicia of support, it should be conclusively presumed to be support. *See Sorah*, 163 F.3d at 401. While *Sorah* is applicable, the *Sorah* analysis of other courts leads this Court to reach an opposite result. For example, in *Andrus v. Ajemian (In re Andrus)*, 338 B.R. 746, 754 (Bankr. E.D. Mich. 2006), the court applied *Sorah* and found that only two of the three traditional indicia of support were present in that case and thus considered additional factors. One relevant factor was that the award was in the exact amount of the net of the debits and credits set forth under the "property settlement" section of the judgment. *Id.* at 755. Also, there was a "bankruptcy acknowledgment" that attempted to "preemptively overrule" any dischargeability determination by a bankruptcy court in the future. *Id.* The court noted that there is no authority to do so and that this appears to violate the Bankruptcy Code. *Id.* at 756. Even though the award was included in the "alimony" section of the judgment and was set up as monthly payments over a period of time, the court ultimately decided that it was a property settlement. *Id.*

13

Regarding the application of the first *Sorah* factor to this case, Plaintiff argues that the state court labeled the award support due to the language in the Arbitration Ruling, which was later incorporated in the Judgment of Divorce, defining the award as a "domestic support obligation." The Court cannot, however, take this language in isolation. In fact, this language was placed in the "Property Settlement" section of the Judgment of Divorce, and under "Spousal Support/Alimony," the judgment made it clear that neither party is to receive or pay alimony. Moreover, the Arbitration Ruling itself recognized that "[n]either party sought nor is either party awarded spousal support, and same should be forever barred." The Court therefore concludes that the state court order did not label the award as support. To the contrary, it appears that the award is recognized as a property settlement but the language defining it as a "domestic support obligation" was included for the sole purpose of the bankruptcy waiver, which is an improper attempt to decide an issue within the exclusive jurisdiction of the bankruptcy courts. *See Andrus*, 338 B.R. at 756 ("the attempt by the 'bankruptcy acknowledgment' to indiscriminately make all obligations of both [parties] non-dischargeable does not in any way override this Court's application of the *Sorah* factors or otherwise help [the party seeking a nondischargeability finding]"). At best, the first *Sorah* factor does not favor either party. With regard to the second *Sorah* factor, because the payment of the award is to be made directly from Defendant to Plaintiff and is not an assumption of a third-party debt, this is an indication of an award of support that favors Plaintiff. On the other hand, the award is not contingent upon such events as death, remarriage, or eligibility of Social Security benefits, and, thus, the third *Sorah* factor suggests a property settlement and not support and favors Defendant.

Because only one of the three indicia of support set forth in *Sorah* is present here, the Court will consider other factors in this case. The summaries prepared by both parties prior to

the arbitration acknowledge that the issues revolved primarily around the distribution of property. Plaintiff's summary specifically stated that "[a]limony is not at issue," while "the equitable division of property is at issue." Also, the arbitration agreement entered into between the parties clearly stated that spousal support was not applicable, while the "division of real and personal property" was to be arbitrated. Thus, it is evident that the parties did not intend for the award to be support. *Cf. McNamara*, 275 B.R. at 837 (stating that because "[f]or almost ten years the locus of the parties' dispute centered on the appropriate level of alimony," the decision to characterize the debt as non-dischargeable alimony was not difficult). Moreover, the Arbitration Ruling itself clearly based the judgment amount on the value of the property at issue. In this respect, this case is similar to *Andrus*, 338 B.R. at 755, where the award was in the exact amount of the net of the debits and credits set forth under the "property settlement" section of the judgment.

In sum, only one of the three *Sorah* factors is present here and the remaining factors all point to a finding that the award was a property settlement and not support. Thus, the Court need not conclusively presume that the state court intended to create a support order. Plaintiff is not entitled to summary judgment on his claim under § 523(a)(5).[5]

B. Section 523(a)(2)

The Court now considers the argument that Plaintiff is entitled to summary judgment on his claim under § 523(a)(2). Plaintiff argues that collateral estoppel applies to the arbitrator's findings regarding the fraudulent actions of Defendant. Defendant disagrees and argues that

---

[5] At oral argument, Plaintiff's counsel argued that Defendant's moving of Plaintiff's tools of the trade deprived him of his means to support himself as a carpenter, so part of the arbitrator's award is support under § 523(a)(5). Although these arguments are unavailing for summary judgment, Plaintiff may present proofs and arguments on this issue at trial.

there is a genuine issue of material fact as to whether she had the requisite intent to deceive. She also argues that the issue of fraud was not ripe for litigation, because the arbitrator exceeded the scope of the parties' agreement by deciding this issue.

Under Michigan law, collateral estoppel principles apply to factual findings made during an arbitration proceeding.[6] *Tweedie v. Hermoyian (In re Hermoyian)*, 466 B.R. 348, 362 (Bankr. E.D. Mich. 2012) (citing *Cole v. West Side Auto Emps. Fed. Credit Union*, 583 N.W.2d 226, 232 (Mich. Ct. App. 1998)). Thus, the issue becomes whether the elements of collateral estoppel have been established by the party asserting the preclusive effect of the arbitration award. *See id.* at 362. Here, it is clear that the first two elements of collateral estoppel are present. Plaintiff and Defendant were the same two parties in the state court divorce action, and the Arbitration Ruling and the Judgment of Divorce incorporating it constitute a valid, final judgment. The remaining questions are whether the facts supporting each element of § 523(a)(2) were actually litigated and necessarily determined in the arbitration proceeding and whether Defendant had a full and fair opportunity to litigate the fraud issue in that proceeding.

The arbitrator found that Plaintiff was entitled to a judgment in the amount of $24,000 due to Defendant's fraudulent conveyance of two vehicles. Under *Husky*, 136 S. Ct. at 1586, fraudulent conveyance schemes can constitute "actual fraud" under § 523(a)(2)(A). The Supreme Court reasoned in *Husky* that "anything that counts as 'fraud' and is done with wrongful intent is 'actual fraud.'" *Id.* Thus, for collateral estoppel to apply, the arbitrator must have found fraud as well as the requisite wrongful intent. *See, e.g., Maxwell v. Maxwell (In re*

---

[6] Defendant cites to the case of *In re Iota Indus., Inc.*, 42 B.R. 285 (Bankr. S.D.N.Y. 1984), to argue that collateral estoppel is not applicable in this case because the parties did not intend for the arbitration agreement to decide the issue of fraud. The court in that case, however, was analyzing the release provision of a settlement agreement and making a determination as to the effect of that release based on the intent of the parties. *See id.* at 287. That case did not discuss principles of collateral estoppel and is inapplicable here.

*Maxwell)*, 509 B.R. 286, 290 (Bankr. E.D. Cal. 2014) (finding collateral estoppel inapplicable because the state court judgment for breach of fiduciary duty did not include a finding of wrongful intent which is required for purposes of § 523(a)(4)); *Hermoyian*, 466 B.R. at 376 (applying collateral estoppel principles for purposes of a nondischargeability determination only to the portion of the Arbitration Award sufficiently supported by findings establishing all of the elements of § 523(a)(2)).

The arbitrator found that Defendant fraudulently conveyed Plaintiff's camper and truck and made specific findings regarding Defendant's intent, including finding her actions "deliberate" and her testimony that Plaintiff wanted her to sign the titles in his name as incredible. Thus, the issue of the fraudulent conveyance of the two vehicles was actually litigated and necessarily determined during the arbitration proceeding. The Court also finds that Defendant had the opportunity to fully and fairly litigate this issue despite her assertion that the arbitrator went outside the scope of the agreement by deciding it. The arbitration agreement stated that the "division of real and personal property, including ancillary issues related thereto" was to be arbitrated. Moreover, Plaintiff's arbitration summary included allegations that Defendant retitled two of Plaintiff's vehicles by taking "the titles from [Plaintiff's] files and sign[ing] them over to herself while [he] was in jail without his consent or permission." Thus, Defendant was on notice that the conveyance of the vehicles was at issue during the arbitration proceeding and had the opportunity to present evidence, including her own testimony, with regard to the matter. In sum, the Court finds that the findings in the Arbitration Ruling regarding the fraudulent conveyance of the two vehicles are sufficient to satisfy Plaintiff's burden of proving "actual fraud" under § 523(a)(2).

17

18-03018-dof    Doc 34    Filed 09/14/18    Entered 09/14/18 11:25:27    Page 17 of 19

The remaining amount of the judgment, however, was not based on any specific findings of fraud. With regards to the award in the amount of $1,200 for the cost of returning the pool to its prior location, the arbitrator found that Defendant was "without any legal justification or right to remove the pool from the property." The arbitrator also awarded Plaintiff $6,302 for moving "more property from the house than she should have." Finally, $10,500 of the award was based on Defendant's "misuse" of the home. The arbitrator found that Defendant made no payments on the house but used the house for profit for a period of seven months and stated that "equity" demanded some kind of pay-back. Thus, not only did the arbitrator not find that Defendant's actions constituted fraud with regard to the remaining property, he also did not make any findings of a wrongful intent. In conclusion, the Court finds that the arbitrator's findings do not satisfy Plaintiff's burden of proof in establishing the elements of fraud under § 523(a)(2) for the items beyond the two vehicles.

In sum, even though the arbitrator stated in his summary that his award was based on his findings of fraud, only the portion of the award based on the value of the two vehicles is sufficiently supported by specific findings regarding fraud. Thus, the Court finds that $24,000 of the judgment amount is nondischargeable due to the preclusive effect of the arbitrator's findings regarding the fraudulent conveyance of the two vehicles, but collateral estoppel does not apply to the remaining portion of the judgment.[7]

## Conclusion

For the foregoing reasons, the Court denies Plaintiff's Motion for Summary Judgment as to his claim under § 523(a)(5) and grants his Motion for Summary Judgment in part and denies it

---

[7] This adversary proceeding may proceed with regard to that portion. The Court notes that in addition to Plaintiff's claims based on § 523(a)(2) and § 523(a)(5), his complaint seeks a determination of nondischargeability pursuant to § 523(a)(15). However, that sub-section does not apply to this Chapter 13 proceeding. *See* § 1328(a)(2).

in part as to his claim under § 523(a)(2). Because this Opinion does not resolve this adversary proceeding in its entirety and because it may impact the Defendant's pending Chapter 13 case, the Court will schedule a telephonic status conference to address how the parties wish to proceed.

      Counsel for Plaintiff is directed to prepare an order consistent with this Opinion and the entry of order procedures of this Court.

**Signed on September 14, 2018**



/s/ Daniel S. Opperman
Daniel S. Opperman
United States Bankruptcy Judge